**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JENNA SCIABICA,

               Plaintiff,

       v.

MARLBORO TOWNSHIP PUBLIC
SCHOOLS, *et al.*,

               Defendants.

Civil Action No. 25-17223 (MAS) (RLS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon four motions to dismiss Plaintiff Jenna Sciabica's ("Plaintiff") Complaint (ECF No. 1): (1) Defendant Marlboro Township's (the "Township") Motion to Dismiss (ECF No. 3); (2) Defendant Pasquale Menna's ("Menna") Motion to Dismiss (ECF No. 12); (3) Defendant Laurie Swanson's ("Swanson") Motion to Dismiss (ECF No. 16); and (4) Defendants Marlboro Township Public Schools ("MTPS"), Michael Ballone ("Ballone"), John Pacifico ("Pacifico"), Loreen Labuza ("Labuza"), Michael J. Gross, Esq. ("Gross"), Vincent Caravello ("Caravello"), Christine Jelinsky ("Jelinsky"), and Michaela Weir's ("Weir") Motion to Dismiss (ECF No. 29). Plaintiff opposed all four motions. (ECF Nos. 17, 19, 25, 35.) Defendants[1] filed replies for three of the motions. (ECF Nos. 24, 32, 38.) The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motions are granted.

---

[1] "Defendants" collectively refers to the Township, Menna, Swanson, MTPS, Ballone, Pacifico, Labuza, Gross, Caravello, Jelinsky, and Weir.

## I.    BACKGROUND[2]

### A.    The Parties

Plaintiff, a New Jersey resident, was a special education teacher with MTPS for sixteen years. (Compl. ¶¶ 2, 9, ECF No. 1.) MTPS is "a public[-]school district organized under New Jersey law, operating schools within [the] Township[.]" (*Id.* ¶ 10.) The Township is "a municipal corporation and a state-created governmental organization[.]" (*Id.* ¶ 18.) Other Defendants hold various titles in connection with MTPS or the Township: (1) Ballone serves as the Superintendent of MTPS (*id.* ¶ 11); (2) Pacifico serves as Principal of Marlboro Memorial Middle School (*id.* ¶ 12); (3) Labuza is Vice-Principal of MTPS (*id.* ¶ 13); (4) Gross is counsel for MTPS (*id.* ¶ 14); (5) Caravello is Business Administrator for MTPS (*id.* ¶ 15); (6) Jelinsky is Assistant Business Administrator for Marlboro Township Schools (*id.* ¶ 16); (7) Weir is an employee of MTPS (*id.* 17); and (8) Menna is a municipal prosecutor for the Township (*id.* ¶ 20).[3]

### B.    Plaintiff's Career

Plaintiff, who served as a special education teacher in MTPS from 2008 until her "forced resignation in 2024[,]" "was a tenured teacher with an unblemished record[.]" (*Id.* ¶¶ 2, 9, 28.) She was "instrumental in introducing the Wilson Reading System to [the] Township, a specialized curriculum designed to help students with dyslexia and other reading difficulties." (*Id.* ¶ 29.) Plaintiff was also the only teacher in MTPS with a "Level II Wilson certification." (*Id.* ¶ 30.) Despite this, Plaintiff was forced to act "out of her highly specialized position [which] denied

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] Other individuals are named as defendants in Plaintiff's Complaint, but the Court does not address them or the facts related to their purported involvement beyond the extent needed to contextualize the facts related to Defendants who filed the instant motions to dismiss. (*See* Compl. ¶¶ 21-27.)

struggling readers with language disabilities an educational resource that no other teacher[] in the district w[as] qualified or licensed to provide." (*Id.*) According to Plaintiff, "[t]he destruction of [her] career" began on March 13, 2024, because of an "innocent interaction in a school hallway . . . involving a playful reference to a dance dress fitting that had occurred the previous week in the presence of the student's mother[.]" (*Id.* ¶ 3.)

### C.    Plaintiff's Relationship with L.T. and Wendi Turturici

L.T. was a student assigned to Plaintiff's special education class due to L.T.'s "reading and short-term memory challenges that necessitated additional academic support." (*Id.* ¶¶ 33, 53.) L.T. attended Plaintiff's class two or three days per week for specialized instruction. (*Id.* ¶ 33.) While working with L.T., Plaintiff "observed symptoms that concerned her and contacted [L.T.'s mother,] Wendi Turturici [('Turturici')] to share her observations." (*Id.* ¶ 34.) This "led to the identification of L.T.'s previously undiagnosed seizure disorder, prompting immediate medical intervention . . . ." (*Id.*) Turturici was "grateful" for Plaintiff's intervention, and Plaintiff claims that her "intervention cemented a relationship built on trust, gratitude, and mutual respect between [Plaintiff] and L.T.'s family, leading to an extended friendship that would last for three years prior to the incident at issue." (*Id.* ¶¶ 35, 36.)

Plaintiff developed a close friendship with Turturici, which was "characterized by frequent communication, shared humor, and mutual support during challenging times" and included regularly sharing text messages, memes, TikTok videos, and personal information. (*Id.* ¶¶ 37, 38.) Some of the communications included their "irreverent, sometimes crude sense of humor that included discussions of topics that might seem inappropriate to outsiders but were perfectly normal within the context of their friendship." (*Id.* ¶ 38.) In fact, according to Plaintiff, "Turturici frequently used inappropriate language in her home and around her children, creating an

environment where casual, sometimes crude humor was the norm." (*Id.* ¶ 39.) Moreover, Turturici also supported Plaintiff when Plaintiff's life partner was diagnosed with cancer and after her partner passed away. (*Id.* ¶¶ 41-45.) According to Plaintiff, Turturici offered comfort, support, and practical assistance whenever she needed during this time. (*Id.*)

Due to the relationship Plaintiff established with L.T. and Turturici, Plaintiff "developed a mentoring relationship with L.T." and "viewed L.T. as if she were [Plaintiff's] own daughter or niece[.]" (*Id.* ¶¶ 53, 54.) This resulted in Plaintiff occasionally texting L.T., and sending approximately fifty text messages to L.T. over the course of three years, all of which were "with the knowledge and explicit approval of . . . Turturici." (*Id.* ¶¶ 56, 57.)

**D.      The March 13, 2024, Incident**

On March 5, 2024, "Turturici repeatedly requested that [Plaintiff] help L.T. try on her dance dress to ensure proper fit for an upcoming performance." (*Id.* ¶ 60.) At "Turturici's insistence, [Plaintiff] assisted L.T. with the dress fitting in the family's home, with . . . Turturici present and actively participating in the process." (*Id.* ¶ 61.) "When it became apparent that the chest area of the dress was too large for L.T., [Plaintiff] helped position L.T.'s breasts appropriately over the built-in padding to achieve the proper fit —all under the direct supervision and with the explicit approval of . . . Turturici." (*Id.* ¶ 62.) L.T. expressed "minor embarrassment" about the fitting process, but Turturici bluntly dismissed those concerns. (*Id.* ¶ 63.)

On March 13, 2024, Plaintiff encountered L.T. in the hallway at Marlboro Memorial Middle School "in full view of other teachers and students," including Weir, another teacher. (*Id.* ¶¶ 65, 66.) Plaintiff asked L.T. briefly about her health, as she had been ill the prior week, and "gently felt L.T.'s forehead to check for fever[.]" (*Id.* ¶¶ 67, 68.) Then, Plaintiff "made a playful reference to the dress fitting that had occurred the previous week, asking 'What did mom decide.

4

How are we getting those boobalas in the dress?' while lightly tapping L.T.'s upper chest area twice with her fingertips." (*Id.* ¶ 69.) "The entire physical contact lasted no more than a second or two" and L.T.'s reaction to the interaction was "entirely positive[,]" as "she giggled, stomped her feet playfully, and continued down the hallway with a smile on her face[.]" (*Id.* ¶¶ 70, 71.)

### E.    Aftermath of the Incident

Weir, who was "positioned approximately two or three feet away from the interaction[] with L.T.'s back to her," reported to the police that Plaintiff had "'groped' L.T.'s breasts 'using two hands[.]'" (*Id.* ¶¶ 73, 75.) L.T., however, attended regular classes and activities after the incident and never reported "feeling uncomfortable or violated by the interaction, nor did she seek support from school counselors or other staff members." (*Id.* ¶¶ 78-80.)

Despite L.T.'s response to the incidents, "Defendants immediately presumed [Plaintiff's] guilt and took drastic disciplinary action[.]" (*Id.* ¶ 82.) Ballone "perpetuated . . . Weir's false accusations and used these lies as the basis to force Plaintiff to resign from her position as a special education teacher." (*Id.* ¶ 83.) Despite there being video footage of the incident between Plaintiff and L.T., Ballone withheld the video footage from Plaintiff. (*Id.* ¶¶ 75, 84.) Plaintiff was suspended with pay pending investigation, but Plaintiff claims that "Defendants [neither] informed [her] of any investigation launched against her" nor provided her "with requisite notice of the specific charges against her, the evidence supporting those charges, or her right to representation during the investigation process." (*Id.* ¶¶ 85-87.) Moreover, "Defendants refused to show Plaintiff the video of the incident . . . until August 31, 2024," despite the fact that both Plaintiff and her attorney made timely demands.[4] (*Id.* ¶ 88.)

---

[4] Plaintiff also claims that her attorney was not permitted to review the video until May 9, 2024. (Compl. ¶ 88.)

On May 13, 2024, Defendants "leveled tenure charges against Plaintiff . . . which was no more than a wholesale adaptation of the allegations contained" in a civil complaint filed by Turturici and her family. (*Id.* ¶ 89.) As a result, Plaintiff claims that "Defendants pressured [her] to resign under circumstances that were coercive and fundamentally unfair, threatening even more severe consequences if she refused to comply." (*Id.* ¶ 91.) Following Plaintiff's resignation, Defendants transmitted "false and stigmatizing information about her to the New Jersey State Board of Examiners and other state authorities" that resulted in administrative proceedings that jeopardized Plaintiff's teaching certification and pension benefits. (*Id.* ¶¶ 93, 95.) Additionally, Swanson and other named defendants posted "false and defamatory content about [Plaintiff] on Facebook, Instagram, and other social media platforms." (*Id.* ¶ 102.)

Plaintiff claims that, "as a direct result of the torrent of Defendants' abuse," she was admitted to a psychiatric ward of a hospital and was released after a judicial hearing. (*Id.* ¶ 108.) On a separate occasion, Plaintiff was treated and released from the psychiatric emergency room and has "been obligated [to receive] mental health services including but not limited to intensive therapies and medications[.]" (*Id.*) Plaintiff's mental health treatment is still ongoing, and she alleges that she has suffered and continues to suffer "devastating economic losses" such as loss of salary, benefits, and pension contributions. (*Id.* ¶¶ 108-10.) Moreover, Gross, Jelinsky, and Caravello have "made false representations to unemployment authorities on at least three occasions that resulted in the denial of [Plaintiff's] unemployment benefits, further exacerbating her financial distress." (*Id.* ¶ 111.) The destruction of Plaintiff's reputation has, according to her, "made it impossible for her to secure alternative employment as a teacher, effectively ending a career that spanned more than a decade and a half" and has subjected her to "credible threats to her physical safety requiring police intervention[.]" (*Id.* ¶¶ 112, 113-15.)

**F.     Procedural Background**

On November 6, 2025, Plaintiff filed her Complaint alleging twelve causes of action: (1) *Monell* liability resulting from a violation of Plaintiff's procedural and substantive due process rights pursuant to 42 U.S.C. § 1983 asserted against MTPS, Ballone, Pacifico, Labuza, Gross, Caravello, and Jelinsky, in their official capacities (collectively, "School District Defendants") ("Count One"); (2) "stigma-plus" liability resulting from a violation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against School District Defendants ("Count Two"); (3) *Monell* liability resulting from a violation of Plaintiff's procedural and substantive due process rights pursuant to 42 U.S.C. § 1983 asserted against Menna in his official capacity and the Township (collectively, "Police Defendants") ("Count Three"); (4) violation of due process under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against Menna in his individual capacity ("Count Four"); (5) violation of the New Jersey Civil Rights Act (the "NJCRA"), N.J. Stat. Ann. § 10:6-2, asserted against School District Defendants and Police Defendants ("Count Five"); (6) defamation asserted against Swanson and other defendants ("Count Six"); (7) intentional infliction of emotional distress asserted against Swanson and other defendants ("Count Seven"); (8) breach of contract against School District Defendants ("Count Eight"); (9) violation of New Jersey Wage Payment Law against School District Defendants ("Count Nine"); (10) constructive termination against School District Defendants ("Count Ten"); (11) "bad faith denial of insurance coverage" against two insurance company defendants ("Count Eleven"); and (12) breach of insurance contract against two insurance company defendants ("Count Twelve"). (*Id.* ¶¶ 119-64.)

School District Defendants, Police Defendants, Weir, and Swanson subsequently filed motions to dismiss. (*See generally* Township's Mot. to Dismiss, ECF No. 3; Menna's Mot. to Dismiss, ECF No. 12; Swanson's Mot. to Dismiss, ECF No. 16; Sch. Dist. Defs. & Weir's Mot.

to Dismiss, ECF No. 29.) Plaintiff opposed all four motions. (Pl.'s Opp'n Br. to Township's Mot., ECF No. 17; Pl.'s Opp'n Br. to Menna's Mot., ECF No. 25; Pl.'s Opp'n Br. to Swanson's Mot., ECF No. 19; Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot., ECF No. 35.) School District Defendants, Police Defendants, and Weir replied. (Township's Reply, ECF No. 24; Menna's Reply, ECF No. 32; Sch. Dist. Defs. & Weir's Reply, ECF No. 38.)

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure[5] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the

---

[5] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendants argue that the claims asserted against them should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted. (*See generally* Township's Moving Br., ECF No. 3-3; Menna's Moving Br., ECF No. 12-6; Swanson's Mot. to Dismiss; Sch. Dist. Defs. & Weir's Moving Br., ECF No. 29-2.) The Court first turns to the Complaint as asserted against Weir.

### A.    Complaint Against Weir

Weir argues that the Complaint in its entirety should be dismissed as to Weir because "[w]hile Plaintiff names [Weir] as a defendant in the caption of the Complaint, and details actions she allegedly took in this case, none of the Counts in the Complaint assert that any cause of action is asserted against her." (Sch. Dist. Defs. & Weir's Moving Br. 10.) Plaintiff "does not oppose dismissal without prejudice" as to Weir. (Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot. 5.)

The Court, accordingly, dismisses the Complaint as to Weir. *See, e.g., Royal v. Rutherford Police Dep't*, No. 11-4862, 2020 WL 3496950, at *1 n.1 (D.N.J. June 29, 2020) ("Defendant Feliciano is only referred to once in the [operative] [c]omplaint and is not named in any causes of action. . . . As there are no claims stated against . . . Feliciano in the [operative] [c]omplaint, he will be dismissed from this matter.").

9

**B.      Counts One Through Four Asserted Against School District Defendants, Police Defendants, and Menna in his Individual Capacity**

Plaintiff asserts four counts pursuant to 42 U.S.C. § 1983: (1) Count One against School District Defendants under a theory of *Monell* liability (Compl. ¶¶ 119-28); (2) Count Two against School District Defendants under a theory of "stigma-plus" liability (*id.* ¶¶ 129-32); (3) Count Three against Police Defendants under a theory of *Monell* liability (*id.* ¶¶ 133-39); and (4) Count Four against Menna in his individual capacity (*id.* ¶¶ 140-47).

Section 1983 operates as the procedural vehicle by which a plaintiff may bring a claim for violation of constitutional rights in federal court. *See* 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### *1.      Count One*

"A public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." *Reitz v. County of Bucks*, 125 F.3d 139, 144 (3d Cir. 1997) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). Moreover, "[a] school district may incur *Monell* liability under [§] 1983 for a violation of an individual's constitutional rights when it implements an official policy or custom that results in a constitutional deprivation." *G.S. v. Penn-Trafford Sch. Dist.*, No. 20-3281, 2023 WL 4486667, at *3 (3d Cir. July 12, 2023) (citing *Monell*, 436 U.S. at 694).

"To plead a municipal liability claim [pursuant to *Monell*], a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Est. of Roman v. City*

*of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (second, third, and fourth alterations in original) (citation omitted). "To satisfy the pleading standard, [the plaintiff] must [not only] identify a custom or policy, [but also] specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Furthermore, "[a]lthough a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that a policy or custom was the 'proximate cause' of h[er] injuries." *Est. of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). To meet this burden, a plaintiff may allege facts of an "'affirmative link' between the policy or custom and the particular constitutional violation [s]he alleges." *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). Additionally, the Supreme Court has recognized that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

As an initial matter, Plaintiff concedes that Count One must be dismissed as to School District Defendant individuals who are not final policymakers. (*See* Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot. 5.) The Complaint does not allege facts as to the final decision-making authority for Labuza, Gross, Caravello, and Jelinsky (*see generally* Compl.), and Plaintiff argues in opposition that the theory she advances relates to Ballone, Pacifico, and MTPS (*see* Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot. 5). Count One is, therefore, dismissed as to Labuza, Gross, Caravello, and Jelinsky.

With respect to Ballone, Pacifico, and MTPS, School District Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because Plaintiff only alleges "conclusory statements" regarding the relevant "policies, customs, and practices[.]" (Sch. Dist. Defs. & Weir's Mot. to Dismiss 14-15.) The Court agrees.

11

Plaintiff's Complaint vaguely alleges that she suffered constitutional violations as a result of MTPS's: (1) "custom of disciplining employees without due process or meaningful investigation"; (2) "policy of transmitting stigmatizing accusations to licensing authorities without substantiation"; (3) "failure to train and supervise administrators regarding the Constitutional rights of employees"; and (4) "deliberate indifference to the reputational and property interests of employees when responding to complaints." (Compl. ¶ 126.) Third Circuit precedent, however, explicitly requires a plaintiff to "specify what exactly that custom or policy was." *McTernan*, 564 F.3d at 658. Without more, Plaintiff's claim must fail against Ballone, Pacifico, and MTPS.

Count One is, accordingly, dismissed as to all School District Defendants.

### 2.    *Count Two*

"Civil rights claims under 42 U.S.C. § 1983 based on reputational harms are known as 'stigma-plus' claims." *D&D Assocs., Inc. v. Bd. of Educ.*, 552 F. App'x 110, 113 (3d Cir. 2014) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006)). To state such a claim, a plaintiff "must show a stigma to h[er] reputation *plus* deprivation of some additional right or interest." *Dondero v. Lower Milford Township*, 5 F.4th 355, 360 (3d Cir. 2021) (emphasis in original) (quoting *Hill*, 455 F.3d at 236). Under the "stigma" prong, the plaintiff must allege that the stigmatizing statements were both "public" and "false." *Id.* For the "plus" prong, the plaintiff must "allege an alteration or extinguishment of an interest protected by the Constitution or state law." *Cooley v. Barber*, No. 07-3327, 2007 WL 2900550, at *1 (3d Cir. Oct. 4, 2007) (citations omitted).

Here, Plaintiff vaguely alleges that: (1) "Ballone . . . perpetuated . . . Weir's false accusations" (Compl. ¶ 83); (2) "Defendants transmitted false and stigmatizing information about her to the New Jersey State Board of Examiners and other state authorities" which contained

12

"materially false statements about the nature of the allegations against [Plaintiff]" (*id.* ¶¶ 93, 94); (3) Gross, Jelinsky, and Caravello "made false representations to unemployment authorities on at least three occasions" (*id.* ¶ 111); and (4) "Defendants publicly and falsely accused Plaintiff of professional misconduct and moral unfitness in connection with her employment, disseminating those stigmatizing charges to third parties, including within the school community, law enforcement, and to state licensing authorities" (*id.* ¶ 130). Plaintiff does not, however, allege what the actual statements are that caused such harm to her reputation or who made which statement. (*See generally* Compl.) Without more, Plaintiff's stigma-plus claim asserted against School District Defendants must fail. *See, e.g.*, *Berkery v. Wissahickon Sch. Bd.*, 99 F. Supp. 3d 563, 572 (E.D. Pa. 2015) (finding plaintiff's stigma-plus claim failed because "nowhere does [p]laintiff identify the alleged stigmatizing statement(s) which she baldly alleges are false" and "[w]ithout the statements, no assessment can be made as to whether, even construed in [p]laintiff's favor, such statements could have a stigmatizing effect on [p]laintiff's reputation"); *Zucal v. County of Lehigh*, 660 F. Supp. 3d 334, 350 (E.D. Pa. 2023) (finding plaintiffs failed to plead a stigma-plus claim where "[p]laintiffs have failed to identify the substance of the purported stigmatizing statements").

Count Two is, accordingly, dismissed.

### 3.    *Counts Three and Four*

Plaintiff alleges a *Monell* liability claim against Police Defendants and a procedural due process violation claim against Menna in his individual capacity based on allegations that Menna instructed employees to "disseminate a CD copy of surveillance video that had been confidentially viewed *in camera* in the criminal trial against Plaintiff." (Compl. ¶¶ 136, 141.) Plaintiff, however, fails to allege that the video was actually disseminated or who it was disseminated to. (*See*

13

*generally id.*) Moreover, Plaintiff fails to provide case law to support any argument that she has a property interest in, or a privacy right to, the video. (*See generally* Pl.'s Opp'n Br. to Township's Mot.; Pl.'s Opp'n Br. to Menna's Mot.); *see also Hill*, 455 F.3d at 234-35 (noting that to state a claim for "deprivation of procedural due process rights, a plaintiff must allege that[:] (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property[;]' and (2) the procedures available to [her] did not provide 'due process of law'" (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000))).

Without more, Plaintiff's claims relating to *instructions* about disseminating a video must fail. Counts Three and Four[6] are, accordingly, dismissed.

### C.    Count Five Asserted Against School District Defendants and Police Defendants

Plaintiff asserts Count Five against School District Defendants and Police Defendants for a violation of the NJCRA. (Compl. ¶¶ 145-47.)  Plaintiff alleges that her "deprivations [asserted under Count Five] mirror and supplement the violations of the United States Constitution alleged in Counts One through Four . . . ." (*Id.* ¶ 147.)

For the same reasons Plaintiff's § 1983 claims fail, however, so too does her NJCRA claim. *See, e.g.*, *Wronko v. Howell Township*, No. 17-1956, 2018 WL 516055, at *6 (D.N.J. Jan. 23, 2018) ("For the reasons set forth in connection with the § 1983 analysis . . . , [p]laintiff[] cannot state a claim under the NJCRA[.]"); *Fearron v. Restuccia*, No. 20-14819, 2023 WL 2367679, at *11 (D.N.J. Mar. 6, 2023) (dismissing NJCRA claims for "same reasons as the § 1983 claim"); *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 504 n.8 (D.N.J.

---

[6] The Court further notes that Menna, as a prosecutor, is protected by prosecutorial immunity for claims asserted against him that relate to the acts he performed in accordance with his prosecutorial role. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.").

14

2019) ("Courts in this Circuit have consistently interpreted the NJCRA and Section 1983 analogously[.]" (citing *Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012))).

Count Five is, accordingly, dismissed.

### D.    Counts Six and Seven Asserted Against Swanson

Plaintiff asserts Counts Six and Seven against Swanson for defamation and intentional infliction of emotional distress. (Compl. ¶¶ 148-54.) Swanson argues that, among other things, the claims against Swanson should be dismissed because Plaintiff "fails to identify any conduct undertaken by . . . Swanson individually." (Swanson's Mot. to Dismiss *2[7].) The Court agrees.

Here, the only facts alleged in the Complaint as to Swanson are that Swanson, among other defendants, "participated in the mobbing by posting false and defamatory content about [Plaintiff] on Facebook, Instagram, and other social media platforms" and these statements "falsely branded [Plaintiff] as a 'predator,' 'groomer,' 'pedophile,' and other deeply offensive terms[.]" (Compl. ¶¶ 102-03.) Plaintiff, however, has not alleged any details about the purported defamatory statements Swanson individually made. *See, e.g., Trainor v. McGibney*, No. 24-8873, 2025 WL 1207595, at *3-4 (D.N.J. Apr. 25, 2025) (dismissing defamation claim and intentional infliction of emotional distress claim premised on defamatory statements where "[p]laintiffs have not indicated what the specific language at issue is and when the alleged posts were published [and a]s such, [p]laintiffs' allegations are not enough to provide notice as to which statements are at issue"). Moreover, to the extent Plaintiff attempts to group plead the claims arising in tort, Plaintiff has failed to allege a cause of action against Swanson. *See Testa v. Hoban*, No. 17-1618, 2018 WL 623691, at *7 (D.N.J. Jan. 30, 2018) (finding that plaintiff "failed to plead 'a short and plain

---

[7] Page numbers preceded by an asterisk refer to the page numbers noted in the ECF header.

15

statement of the claim showing that the pleader is entitled to relief' against [certain d]efendants" where plaintiff failed to plead any allegations as to those defendants (citations omitted)); *McLeod v. Fifth Jud. Dist. of Pa.*, No. 20-1362, 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) ("Pleadings that fail to identify each defendant's role for the alleged wrong are insufficient." (citing *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017)).

Counts Six and Seven asserted against Swanson are, accordingly, dismissed.

### E.  Count Eight Asserted Against School District Defendants

Plaintiff asserts Count Eight for a breach of contract claim against School District Defendants. (Compl. ¶¶ 155-56.) School District Defendants argue that Count Eight should be dismissed as Plaintiff "failed to allege facts sufficient to demonstrate a viable breach of contract claim[,]" including because: (1) "there [are] no facts alleged, nor could be alleged that [Plaintiff] was employed by any of the six individuals [Plaintiff] named[;]" and (2) Plaintiff fails to allege "that [her] employment was based on a contract, and if it was, what the terms of that contract [were], what terms [MTPS] allegedly breached, and whether that alleged breach led to a legally cognizable loss." (Sch. Dist. Defs. & Weir's Moving Br. 20.) Plaintiff recognizes in opposition that "[b]ecause Plaintiff's employment relationship existed with the School District as the employing entity, contractual liability runs against that entity rather than individual employees" and, as a result, Plaintiff "does not oppose dismissal of the breach of contract claim against the individual defendants to the extent they were not parties to the employment contract." (Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot. 25-26.)

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms;" (2) the plaintiff performed her contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because

16

of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)). Here, Plaintiff fails to allege a breach of contract claim, including because Plaintiff's Complaint does not allege: (1) a contract containing certain terms; (2) the fact that her employment with MTPS was governed by a contract containing certain terms; or (3) a breach of those certain terms. (*See generally* Compl.); *Goldfarb*, 245 A.3d at 577. Without more, Plaintiff's breach of contract claim asserted against all of School District Defendants must fail.

Count Eight is, accordingly, dismissed.

**F.    Count Nine Asserted Against School District Defendants**

Plaintiff's Count Nine asserts a cause of action under the New Jersey Wage Payment Law (the "WPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.* (Compl. ¶¶ 157-58.) School District Defendants argue that this claim should be dismissed because "Plaintiff has not alleged any facts demonstrating that her salary was withheld." (Sch. Dist. Defs. & Weir's Moving Br. 21.) In opposition, Plaintiff argues that she adequately alleges a claim under the WPL because she "was an employee of the Marlboro School District who performed services as a tenured educator" and alleges that "Defendants failed to pay compensation owed to her in connection with her employment and separation from service, including earned salary and related employment payments." (Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's Mot. 26.)

The WPL "sets forth requirements as to an employer's timing and mode of payments to [its] employee[s]" and "confers a private cause of action on employees for an employer's failure to pay wages according to its requirements." *Mahanor v. Berkley Life Scis.*, No. 21-18981, 2022 WL 2541773, at *16 (July 7, 2022) (citations omitted). The WPL defines "wages" as "the direct monetary compensation for labor or services rendered by an employee, where the amount is

17

determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1.

Here, Plaintiff's conclusory allegations state that "Defendants violated New Jersey wage payment laws by withholding [Plaintiff's] earned salary without legal justification[.]" (Compl. ¶ 110.) Plaintiff does not identify which Defendants[8] purportedly withheld her salary and further asserts that she was actually "suspended *with pay*" (*id.* ¶ 85) and that she subsequently resigned (*Id.* ¶¶ 91, 92). Without more, Plaintiff has not adequately alleged facts that one or more of School District Defendants withheld her wages in accordance with certain requirements in violation of the WPL.

The Court, accordingly, dismisses Count Nine.

### G.     Count Ten Asserted Against School District Defendants

Plaintiff's Count Ten asserts a "constructive termination" claim against School District Defendants based on the alleged fact that "Defendants created intolerable working conditions through false accusations and public defamation, forcing [Plaintiff's] constructive termination." (Compl. ¶¶ 159-60.) School District Defendants argue that Count Ten should be dismissed because "'constructive termination' is not a stand-alone cause of action." (Sch. Dist. Defs. & Weir's Moving Br. 24.) The Court agrees. *See* 4 McQuillin Mun. Corp. § 12:317 (3d ed.) ("Constructive termination is not a stand-alone case of action; the constructive discharge doctrine simply extends

---

[8] The Court notes, however, that a claim pursuant to the WPL is only available as against one's employer. *See* N.J. Stat. Ann. § 34:11-4.2 ("[E]very *employer* shall pay the full amount of wages due to [its] employees… (emphasis added)); N.J. Stat. Ann. § 34:11-4.10 ("Any *employer* who knowingly fails to pay the full amount of wages to an employee . . ." (emphasis added)). Plaintiff recognizes this in her opposition, noting that "[t]o the extent liability lies with the employer responsible for paying wages, Plaintiff does not oppose limiting the claim [to the relevant Defendant] accordingly." (Pl.'s Opp'n Br. to Sch. Dist. Defs. & Weir's 27.)

liability to employers who indirectly effect a discharge that would have been forbidden by statute if done directly."); *Knox v. Union Twp. Bd. of Educ.*, No. 13-5875, 2015 WL 769930, at *8 (D.N.J. Feb. 23, 2015) (dismissing "constructive discharge claim" because it is not an independent cause of action); *Matos v. PNC Fin. Servs. Grp.*, No. 03-5320, 2005 WL 2656675, at *8 (D.N.J. Oct. 17, 2005) ("[C]onstructive discharge is merely a form of adverse employment action, and is not an independent claim." (citations omitted)).

The Court, accordingly, dismisses Count Ten.[9]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are granted. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: _____June 23_____, 2026

---

[9] To the extent Plaintiff attempts to plead a claim for an adverse employment action such as wrongful discharge, she fails to state a claim upon which relief can be granted as she fails to adequately plead the other elements of the claim. *See, e.g., DeFalco v. Rutgers Univ. Police Dep't*, No. 15-6607, 2017 WL 6667517, at *8 (D.N.J. Oct. 30, 2017) (noting that to adequately plead a cause of action for wrongful discharge resulting from a "constructive discharge, [p]laintiff must assert both discrimination and a discharge, i.e. a cessation of employment").

19